We'll go on to the next case on the calendar, 20-35484, Santoro v. Ocwen. Thank you, your honors. Can I move it? Let's see if that works. Is that better? Yeah. Hold on just one second so we can get a good recording. We have to make sure everybody's... If we're wrestling papers, then the recording gets a little goofed up. All set. No, I'm just asking you're all set. I'm just trying to get the papers settled. Okay. Anytime you're ready. Thank you. Good morning. And may it please the court, my name is Tylee Kramer. I'm a student at the University of Washington, and together with my classmate Madison Welsh, we represent the appellant Stephen Santoro. I'd like to reserve five minutes of rebuttal for Ms. Welsh. That's fine. Just keep track of your own time, please. Thank you. This case is about the violation of a basic property right. Oregon is a lien-free state, as codified by Oregon Statute 86010. This means a loan servicer may not take title or possession of a homeowner's property until foreclosure. So why should we not certify that question to the Oregon High Court? We're asking this court today to rule on the merits of Stephen Santoro's claim in reverse. However, in the alternative, yes, we're asking that the court certify to the Oregon Supreme Court for a variety of reasons. What is your best argument as to why we should not do that and rule on the merits? Well, the case law in Oregon is clear that lien theory prohibits a lender from taking possession. So although the Oregon court system has not yet answered the specific precise question. What does that mean? You just said the case law is clear, but they haven't answered the question, so you kind of lost me. You're right. That's okay. Back up and try that one again. Oregon has been a lien theory state since 1862. And so although the precise question of the specific subsection that's in a deed of trust has not been answered by the Oregon Supreme Court, the court has before it the definition of possession and the information from the statute that the actions of Aukwin and its illegal preservation violate this statute. But is the question whether it can be contracted around? I mean, has that issue been just— In other words, the fact that the statute says this, does that preclude an agreement to the contrary in the deed of trust or in the mortgage? The Ninth Circuit, in fact, has discussed this issue in investors' syndicates where they looked at the amendment to the statute 86010, which contemplates rents and profits. And it does create a specific carve-out for lenders and borrowers to be able to transfer possession for the purposes of rents and profits only. But there's a huge caveat to that. That excludes homesteads. And in this case, Stephen Santoro was living in his home and it's undisputed that this counts as his homestead. So the statute contemplates the ability to contract around certain things, but it explicitly excludes contracting around lien theory when he's at home. Other than farmlands or homesteads. Exactly. Is there any state that has a comparable statute that has ruled to the contrary? I mean, I think there's a Washington court case now. But that didn't exist at the time that the district court entered the ruling in your case, right? Correct. Okay. So my question is, is there any state that has a comparable statute that has ruled contrary to the Washington court? Not that I have that information, no. I can't find one either. So is this part of your argument as to why we should not certify the question and just reach it? Yes, absolutely. Jordan v. Nation Star is a compelling companion case and quite persuasive for this court, in which you can see how the Washington Supreme Court analyzed the exact deed of trust provision and also was a lien theory state. I'm sorry. What is the pivotal question? It's whether this was possession. Is that the question? Yes. If we were to certify something, what would we certify? What would be the question we would certify? I have the question that we're asking the court to certify here, if you'd like me to read it. Yes, please. Under Oregon's lien theory of mortgages and Oregon Statute 86-010, can a borrower and lender enter into a contractual agreement prior to default that allows the lender to enter, maintain, and secure the encumbered property prior to foreclosure? I'd like to caveat this, that this is quite a general question. And, of course, if the court would like to change it to make it more specific as to subsection A of this deed of trust, it may do so. Right. So what is the answer to Judge Berzon's question about what's really the pivotal issue that we would need to get resolved? Thank you, Your Honor. The pivotal issue is whether or not subsection A, which is the default cause of the lockout provision, is enforceable under Oregon law. And because it violates lien theory, we are asking the court to make a decision on that today. We are not asking about the other independent clauses that come into play in the deed of trust because they are irrelevant to the case. But what I'm not understanding is, where is the hole in Oregon law? If you say that it is clear that with regard to the homestead you can't contract around, the statute says whatever it says, you're saying they violated what the statute says. So what's the undecided issue? I'm not sure I understand the question. I apologize. Well, that's why I asked first is the question whether this was possession. I don't understand what exactly the undecided issue is. Well, I suppose it goes to the notion of consent and whether a lender can… But you've already said that as a general matter under Oregon law, consent doesn't vitiate the statutory requirements within a certain category, which is basically when it's affecting the homestead. If a person comes home and he doesn't have his home, that would seem to affect the homestead. So what's the open issue? Well, in that framing, the answer becomes quite clear, that a lender may not gain consent pre-default and that this constituted possession under Oregon law because the moment a loan servicer changes the locks on a home, that constitutes possession as control and exclusivity of the home. My understanding is that's the… Well, we'll see what your opposing counsel says, but in terms of what they're contesting, I think that's what they're contesting, whether there was possession. Yes, and I can speak on that possession issue if you would like, Your Honor. I'm getting nervous on your co-counsel's behalf. I'm not sure how you decided to allocate your time. I believe I have three more minutes before she's up. Okay. Speaking to Oregon case law, the issue of possession is relevant for the trespass and intrusion upon seclusion claims. Specifically, Oregon case law confirms that Aquin took possession of Stephen Santoro's home the moment it changed the locks. Oregon law is clear that a certain degree of exclusivity and a certain degree of control is required and that Oregon law also considers the nature of the property at issue when looking at possession because Stephen Santoro was excluded from his home by a third party and this fundamental protection of the home was violated. Possession is clear that Aquin took it. Again, possession was the paramount issue that was discussed in Jordan v. Nation Star, and the Washington Supreme Court's decision in that case is quite instructive for the court today. Next, I'll address the UTPA and conversion claims that were resolved on summary judgment. Aquin claims that it did nothing. Is your co-counsel going to talk about the agency and employee questions? I can absolutely speak to that if you would like. My understanding is that the defendant's main argument is that they're not responsible for whatever happened here. Yes, that's correct. An argument that we deeply refute and think it was inappropriately decided on summary judgment. Is this one of your issues or a co-counsel's issues? That was what Judge Berzon asked. Oh, I apologize. We were deciding that we would share the issues. All of them? Yes, there are many issues in this case. Well, that's why we're confused. Okay, knock yourself out. Okay, thank you, Your Honor. I see I have one more minute, so I'll try to be brief. There are two ways to look at liability in this case, and they attach to different issues in different ways. It was discussed in the UTPA and conversion claims. You can look at vicarious liability through the employee-employer dichotomy, or you can look at agency law. And under both of these theories— But I thought that for some of the causes of action, there has to be an employee, like conversion, because it has to be vicarious liability. That is correct. As far as the trespass and invasion towards—could be reached through an agent. Is that right? Yes, that's correct. However, for trespass and intrusion, the idea of vicarious liability was not discussed because Aukwin solely relied upon a consent-based defense. Although the merits of that liability may need to be reached, they were not yet discussed, and they were not discussed by the district court. But because Aukwin exercises control over all of its vendors through a series of mirrored contracts that launder the liability that Aukwin holds by triggering the preservation, Aukwin should be found liable for the actions of its sub-agents or employees, depending on the theory upon which— Are those issues a fact that have to be decided by a fact file, or could we do that as part of our de novo review? Because I think we're in that fuzzy area of mixed questions of fact and law, and I think we have the responsibility to decide the law. But what facts do we then use in order to exercise that responsibility, or should we send it back to a fact file that can resolve these issues? That's a great question. Thank you, Your Honor. Well, there are facts available through discovery for the UTPA and conversion claims. However, for the trespass and intrusion, those facts have not yet been explored, although they may overlap. Therefore, you can decide as a matter of law vicarious liability or agency. However, it does become a question of fact when there are reasonable inferences that would point to liability of the principle. And I see I'm at 4 minutes and 20 seconds. I'd like to reserve the remaining time if there are no further questions. That's fine. Thank you, Your Honors. Good morning. May it please the Court, Thomas Abbott on behalf of the Appellee, Aquin Loan Servicing, LLC. I'm going to start with certification and the waiver issues because I think they're related closely. I'm going to start with waiver. Mr. Santoro has expressly stated he doesn't dispute the legal validity of subsections 9b and 9c of the deed of trust. 9c is important. 9b is not. 9c is the one where it talks about abandonment, and then it goes into giving the rights to the lender to secure property that it thinks is abandoned. So that's the one that's important. On that one, as I understand it, there is a factual dispute on summary judgment, or at least that's the position of Santoro, is that there is a factual dispute on summary judgment. As to whether the property was abandoned. Well, I'm sorry. I had a little trouble hearing you, Your Honor. I apologize. As to whether the property was vacant. In other words, that there is a factual dispute. They're not contesting the legal standard, but they are contesting whether there was a vacancy. I think that Mr. Santoro disputes that the property is vacant, but I don't think—well, I sound very loud all of a sudden. I don't think that the record supports that dispute necessarily, but I think I may be—my point may be subtle, but I do want to develop, if I may, Your Honor, because I think it will answer your question. Certification is being proposed as to subsection 9A of the deed of trust. And you say it may not settle the case, but it would settle the case if we first decided that there was a dispute of material fact as to vacancy, and therefore, as to the result in the case, it does—the A issue would settle—would be discussed. It would not. It's a question. Well, it would, depending in what direction we decide the case. I don't think—Your Honor, I respectfully disagree. What's your subtle issue? Could you go back to your subtle issue that you wanted us to get? I'm trying to get the notes on that, and then I can catch up to the conversation you're having. I think 9C is the outcome-determinative section of the deed of trust. And because Mr. Santoro doesn't dispute the legal validity of 9C, I don't think certification is appropriate because you need that outcome-determinative element for certification of a legal issue. So you've got kind of two things going on here that make certification unwarranted. Counsel, that just—that depends on what we certify. What? That just—that depends on what we certify. We're not obligated to certify the broad question. We're not obligated to certify at all, as you know. Right. But I'm not sure this is going to help me resolve the case because we could recraft the certification question. You could. I think the Court could do that. Also, to my mind, it is outcome-determinative sufficiently, or if the Washington Supreme Court thinks it isn't, or refuse certification to say that for us to know what our bottom line is, we're telling you that we're going— I'm just hypothesizing, but we're going to hold—we could say that there is a material issue of fact as to C, but as to A, it's a pure legal question. So what we decide on A depends on what you tell us. So it's outcome-determinative as to what we decide on A, and I think that would satisfy the Washington Supreme Court. I don't disagree. But if it wouldn't, they could tell us that. Yeah, no, I don't disagree necessarily, but I will say, and this is very briefly, Jordan has extremely different facts than this case. This case is one where Ocwen had already subjected itself to the jurisdiction of the Coos County Circuit Courts way back in January of 2013 to prosecute a judicial foreclosure. The events that took place here occurred in March of 2014. Now, there is the argument in the brief— Why does that change anything? It means something because the argument in the brief is that Ocwen has sort of done a land grab type of thing, that it's attempting to get the land, the property. I don't know that that's true. I appreciate that there was this parallel action going on, but I think the legal question is much more focused than that. And I'm just concerned that I don't see any case law where any court— sorry, any state that's got a comparable statute has done what you're asking us to do here. Well, no, but Oregon has many, many ordinances that require lenders to secure properties that appear vacant and abandoned, and I put that into the answering brief. I don't think Coos County has one, but there's numerous counties that do. Not every state is like that. Let me put it this way to give you just a fair opportunity. The reason I am disinclined to certify is that I just think the statute's really clear. Yeah, I don't think the statute's unclear. I don't disagree with Your Honor about that. So what's the problem, then? Why do you think, as to A, that there wasn't a violation of it? Well, I don't—I think Aquin has been saying from the very beginning that it did—it ordered and requested lockout services because it was told the property was vacant on two separate occasions, in February of 2014 and March of 2014. Apparently incorrect. Sorry? Apparently incorrect. Yes, apparently incorrect. Right, but we're looking at this through the lens of, well, what did Aquin do right or wrong here? First of all, I mean, I haven't touched on vicarious liability, which I think kind of wraps everything up in a different way, but Aquin gets reports that the property's vacant in February. And this is from a different vendor, apparently an ABC. We've been over the facts carefully. Yes, and then a different person tells them in March. And so in between February and March, they send out this letter, a 15-day vacancy letter. And he says he didn't receive it. He says he didn't receive it. We really have read the briefs. I know. He says he didn't receive the letter and your client didn't keep a copy of the letter. We really have read the briefs. My client's records show that it's sent it out, though, and my client's records— Like a check or something. Sorry? And they typically keep copies, and they didn't keep a copy. Couldn't produce a copy. I mean, counsel, is that a dispute of fact? It's not a dispute, but I don't think it supports the conclusion that the letter wasn't sent because their computer system, which is the records are created at or near the time of the event, shows that it was generated and sent. That's a dispute, right? Your team says that they sent a letter. He says he didn't get the letter. Well, no, Mr. Santoro disputes receiving it. He has no basis to dispute that Ockwin sent it. There's a dispute about notice. Well, that's the mailbox rule, isn't it? This is not a good use of time on the letter. Okay. Can I just help you out there? Well, it's only a mailbox rule if you have somebody who's a— if you have a live body who can say that they actually put it in the mail. You don't have such a person. Well, somebody put an entry into the Ockwin's computer system in February of 2014 before litigation. It's not in the briefs. I don't think that would work for the mailbox. What about the two reports? I'm much more interested in that because I think we really do understand the record about the letter that was— your team says it was sent and he says it wasn't received. So we have a dispute about whether that suffices for notice. But if you could back up to the two reports. Yes. And, of course, the reports, I think, don't give a heads up except for the photographs. What about the photographs? Yeah, the photographs in the 2020 hindsight vision of litigation, clearly they are questions that were raised. I think Kyle Lucas in his deposition even said that. Sorry? I thought there were other reports with pictures of the right house. That the pictures were—I'm sorry? There were other reports with pictures of a different house, the right house. I think there were reports that had pictures of the right house and of a different house. The immediately preceding report had a picture of the correct home, I think. And then this one that they acted upon did not. But I don't think there are any other discrepancies. That's what I'm trying to get at. I'm trying to ask, are there other discrepancies between those two reports that should have given somebody a heads up? I don't think so, no. Not that I'm aware of. Okay, so what about the photographs? Why is it unreasonable for them to think that before foreclosing on somebody's home that that should have been noticed? Well, AltaSource's deposition, they acknowledged that they should have looked at it. They said, well, looking at today, we should have looked at it and been more careful back then. And that's fair of them to say. And I think it boils down to that. So Ockwin doesn't see the photos. That's something that AltaSource sees. And then AltaSource asks its vendor to go ahead and go back. And that's what Carl Ferris did. Neither of you have really talked about the agency issue here. And your brief, though, spends most of its time on it. So why isn't AltaSource an agent? They're not an employee, but why aren't they an agent? There was somebody who was sent out on behalf of Ockwin to do X, Y, and Z with very specific directions. And why isn't they an agent for the purpose of doing this task? Yeah, well, I think the Vaughn case is good to look at as a juxtaposition. But the reason is because Ockwin didn't have control over the specific act that gave rise to the claims or the injuries that Mr. Santoro's brought this lawsuit for. I thought they told them exactly what to secure and how to do it and so on. No, respectfully. Lots of directions. No, you have the contract, and it's at Volume 5, 927 to 940, and it consists of these two schedules. And the first, Schedule A, has a list of description of services. It doesn't go into exhaustive detail how to do everything, but it says this is what a service is. And then Schedule B gives the pricing for those services. But Ockwin didn't step foot in Oregon. Ockwin didn't train anyone at AltaSource or anyone else, for that matter. He had no input into how AltaSource went about delivering the services. Just so I can be clear, if we were to certify, I take it we would still have to resolve now two issues, the independent contractor issue and whether summary judgment was correctly granted. We don't have to wait for the certification to be answered before we decide those issues now, correct? I think that's correct, and I also think it would resolve ultimately the issue that might be certified. But, yes, I agree with you on that. I don't know. So on the independent contractor issue, that's an issue of law, which we have to decide based upon the record that we have, exercising the NOVA review, whether it really does satisfy the independent contractor case. You don't think we have to remand to get more factual development on the issue, do you? I don't think so. You have depositions of both sides of the contracting parties, and in the Vaughn case, that's what they relied on was depositions. In the Hampton case, which is the Hampton Farms case, it's a party that bought lumber and was selling lumber to a mill, you had depositions and you had the court rely on that. I don't know what other evidence there would be or what a fact finder could add to it. I get that. Now, on the summary judgment issue, it seems to me that there are underlying issues of fact that have to be resolved on the issue of lawful possession or not. How do you get around that? Well, in a couple of ways. One is if Ocwen isn't vicariously liable for the actions of Altersource, et cetera, then those questions are questions that will inform on liability for Altersource, Kitsap, or Mr. Ferris. I mean, that's the primary thing, and that was the primary basis of our motion for summary judgment, as Your Honor knows. But we still would have to reach that issue, regardless of how we decide the independent contractor issue, wouldn't we? I don't think so. I think it would moot it as to Ocwen. As to Ocwen, but how about the others? Well, right, right. Other parties, and I think Altersource had a ruling on an MSJ that may or may not have been appealed, I don't know, but it would relate to their other parties, Your Honor. Okay. Is Altersource a subsidiary of Ocwen? I'm sorry? Is Altersource a related corporation to Ocwen? No. No. I thought it was. Now, I do want to talk about the Vaughn case just a bit, because it's a... Well, the Vaughn case deals with employees and torts and physical injuries and what applied to the conversion claim, but how does it apply to the trespass and invasion claims? Well, it talks about what constitutes an agent, and I think this is, I would say this plugs in. If you have an agent that does something in the course and scope of employment, you're going to be, as a principal of that agent, you're potentially going to be vicariously liable for it. I don't think the agency analysis is going to change whether the reported wrongdoing is A, B, or C, necessarily. And in Vaughn, I think it's important because the Port of Portland contracted with First Transit and had extensive control over First Transit. It could change its budget, it could reject employees, and it could also even take over the driving of shuttle buses at the airport. And the court found that First Transit was not an agent of the port because for the injury-producing event, the actual conduct that caused that, the driving of a shuttle bus, it wasn't something that the port had control over. And I think Ocwen doesn't have control over the cascading series of vendors that AltaSource used. It doesn't have control over the specific manner in which AltaSource went and did the securitization of the property. It had no control over AltaSource ignoring the LP flag, which is another issue. Ocwen had an LP flag on the file because it was in litigation with Mr. Santoro. It can't discharge, basically, fire them if they choose to do that, if they're not happy with the way they render their services. Ocwen could, I think, terminate the contract. I think AltaSource could have as well. Yeah, yeah. But does that suggest that there's an agency dynamic here and not independent contractors? No, because I think both could have terminated the contract, and I don't think AltaSource was an indentured servant of Ocwen's or was obliged to continue doing business with Ocwen. But in any case, I mean, so I'm fixating on Bowen, and your honors have read that and know the case, but there's such a level of control in that case. But it comes down to, and this is already the Oregon Supreme Court speaking on this issue. It's a right to control. It's not control, right? Well, it's control. I think it's control. Well, the quotation from the restatement is that there's a right to control physical details. Okay. Okay, fair enough. But in any case, I don't think Ocwen had a right to control how AltaSource went about its property preservation and securitization services.  I mean, Ocwen said you had to follow the law, but I don't think that's controlling how something is done. Would Ocwen not have a legal responsibility to have that right to control them? I'm sorry, your Honor? Would Ocwen not have a legal responsibility to have that right to control? Could Ocwen just contract it away and then say? I don't think it's a matter of contracting it away, but the practicality is that Ocwen's a company that sits in, I think, West Palm Beach, Florida. Wait a minute, why isn't it? Now you do have my attention. I'm sorry? I don't think it's a matter of contracting it away. I thought you were relying on the fact that they contracted it away. Well, I think I took the question from Her Honor to be that can Ocwen just sort of, you know, contract away liability? That was her question. Can Ocwen, if it has a responsibility not to take possession, and possession has certain elements, and I'm hypothesizing that it does, then hire somebody to go and do the actual on-the-site activities and not take any responsibility for what it does? Well, Ocwen has said you have to follow the law. That's one thing. Ocwen had a flag system where they'd put a flag on a loan, and that meant that AltaSource couldn't just blindly go about its business and they had to check in and say, hey, what is this flag for? Ocwen had the flag on Mr. Santoro's loan because of the judicial foreclosure. AltaSource should have contacted and said, hey, this is what we're finding. What do you want us to do? Because when you're in litigation, you have to be, you know, Ocwen's approach was to be double careful about it. So in this case, I don't know. I think AltaSource deviated from what it, by its own testimony and depositions, was its own approach to how to deal with these things, and I don't know if it explained why, but the record's pretty clear that AltaSource should have checked in with Ocwen. It didn't. So isn't the answer to Judge Berzon's question, or maybe my response to your follow-up comment, that you're relying on the fact that, in your view, it is a duty that could be contracted away and they contracted it away? Duty to be contracted away. That's what Judge Berzon is asking you, and I understood you to be saying no, and then I responded by saying, I think you're relying on their ability to contract it away and that your position is that's what they did here. Do I misunderstand your position? See, I think I'm resisting the nomenclature of duty to contract away because what it is is you've hired someone to do something. It is a paraphrase, and forgive us for paraphrasing, but isn't that your position? If you want to boil it down to that, I would say sure, but I also think that we have to hire people to do things. We don't want a loan servicer getting into various other businesses necessarily where they're going to not know what they're doing, as we don't want, say, an AltaSource to be in the loan services. So you're significantly over your time, but my question is, if you could wrap up, my question really is, I want to make sure I don't fundamentally misunderstand your theory here, which is that you've got this state that you're operating in that has a statute and that you think that the contract provision controls. I think the contract provision under subsection 9C controls, yes. The contracting away, I mean, there are two kinds of contracting away here. That's one. The other is the relationship between Ockwin and AltaSource and whether Ockwin had responsibilities because of that, which has been handed over to AltaSource and is now saying it has no responsibility. I think Ockwin always has a responsibility. If Ockwin had went to Mr. Santoro's house and changed the locks, then we wouldn't be having a discussion about whether AltaSource was an agent. But Ockwin hired a local company with local resources to do this. And while Ockwin always has its own responsibility not to break the law or not to break into someone's house or not to change locks when it doesn't have the basis to do so, that's why I'm not contracting away that duty. It has choices about how it engages people to perform these services, right? And your position is the way this was structured, they didn't retain responsibility. I think the way I would put it, Your Honor, respectfully, is that when Ockwin contracted with AltaSource, they did not adopt responsibility for everything AltaSource did. Okay. I'm not sure that's meaningfully different, but I am sure that you're four minutes over your time. I know. Thank you, Your Honor. I apologize for that. Thank you so much. You don't need to apologize. We took you over. But is there anything further? Okay. Thank you very much for your argument, counsel. Good morning, Your Honors. Madison Welsh for the appellant, Stephen Santoro. I have three points on rebuttal, and I'd like to begin by clarifying a couple of facts that came up in opposing counsel's argument. First, AltaSource was a company that was spun off from Ockwin's operations in 2009. Second— Spun off, meaning they still own it or not? Meaning, I'm sorry? They own it or they don't own it? I don't believe Ockwin owns it, but it is a company that was spun off from Ockwin's operations. It's a related company. Oh, wait a minute. Those are two different things. You think it's currently related, legally related, or was it spun off? I don't believe there's presently a legal relationship between the companies. Okay. All right. Thank you. Second, Mr. Santoro did not receive notice of the preservation, and Ockwin has a documented history of poor recordkeeping, and that's located in the record at 3 ER 527, 531, and 536, and there is plenty of evidence that Mr. Santoro never received notice, and even though there was a notation in Ockwin's system, they were not able to produce a letter because they did not send one. What about the parallel state court proceeding? The foreclosure proceeding? There was a judicial foreclosure ongoing that Ockwin assumed in the spring of 2013. The proceedings were commenced by GMAC initially, who held— So my question—I don't want to use up all of your time. My question goes to notice. So this letter, I think that your point is well taken about whether or not that letter was sent or received or whether there's an issue of fact about that, but to what extent does opposing counsel get to rely upon the parallel proceeding in state court for notice? The foreclosure proceeding is only relevant because there was no judgment of foreclosure issued at the time the preservation happened, and that is the basis of our argument that Ockwin violated lien theory because they recovered possession of Mr. Santoro's property prior to foreclosure. The relevance of whether the letter was sent is really whether Ockwin, in taking possession, had—they rely on the nonresponse to the letter as evidence of vacancy, of the fact that he was unresponsive, and if he never sent a letter, then it's not evidence. So that, I think, is what its pertinence is only, as far as I know. Well, frankly, Your Honor, the notice letter is just representative of Ockwin and its agents' many egregious mistakes in this case. Could you succinctly respond to the agency question with regard to Alderson, because it's critical? Yes. So the agency question is related to Mr. Santoro's conversion claim, which is on appeal— No, no, not on the conversion claim. As I understand it, they are arguing not on the conversion claim but on the trespass and intrusion claim that Ockwin has no responsibility for Alderson's. They are arguing it on the conversion claim, but that's a different and harder question for you, but on the trespass and intrusion claims. Your Honor, my understanding of Ockwin's position is that there's no dispute with respect to the trespass and intrusion upon seclusion claims, whether agency attaches at this— That was not my understanding at all. My understanding is that their argument is that they're not employees, but they're also not agents, and that's why it keeps relying on the agency part of Vaughan, not the employee part of Vaughan. And what they did with regard to the possession, not battering the house and stuff, but the whole episode was not— including making a mistake about whether the house was vacant— was not Ockwin's responsibility. Right. So my understanding, Your Honor, is that— Well, let's assume that's their argument. Why are they an agent? Why is Altersor an agent? So the operative question for agency is whether there's mutual consent for the principal and agent, for the agent to act on behalf of the principal, and that's evident from the contracts in this case. Altersor's agreed— There's also some control factor, according to Vaughan, right? There has to be. To be an agent rather than an independent contractor, there has to be some control. Yes, there is a requirement that there has to be some level of control, and Ockwin did exercise—and I see I'm over time. No, you're going to need time to answer this one. Go right ahead. Okay. So Ockwin did exercise significant control over Altersor and the subagents in this case. They dictated the locations of the preservations, the price points, the time frames, the deadlines. There was also a complete— Wait a minute. Time frames and deadlines, you went a little quickly over that, right? The time frames and deadlines are pretty broad, I think, right? Aren't they? Significantly broader than another case law. Well, I see them as being quite rigid. If you look at the Altersor's Ockwin contract, it requires that Altersor and its vendors complete the preservation tasks, like 90% of the preservation tasks within a 4- to 5-day window. And the other 10% within 30 days, right? So you have to kind of live with that part. So time frames and what's your other point? There's also a complete lack of discretion between each vendor to decline a work order. The vendors risk termination or nonpayment if they don't accept a work order, and that's at 5 ER 930, 5 ER 959, 5 ER 766. Additionally, Altersor is required per the contract to perform preservation tasks per specifications provided by Ockwin's guidelines. So that shows that Ockwin does control the manner and method of performance. And additionally, Ockwin has a supervisory role. Ockwin requires Altersor to make monthly, quote, detailed reports that cover the quality and timeliness of delivered output, and that's at 5 ER 930. Are those reports property by property? I am not sure. All I know is what's in the contract, and it does not say that. I couldn't find anywhere where they retain, sort of get a report property by property. Well, there is the requirement of the inspection reports, which are property by property, and those are done monthly as well. Okay. Okay, so I'm well over time, and I'll quickly conclude by asking that the Court reverse and remand. Thank you. And thank you to the students for their arguments. Wait, could you hold on? I don't think I ever got an answer to my question about whether you think the state court proceeding is relevant or not. You went back to the letter in response to one of our other questions, but you said it's only relevant to the extent, and then I think you got derailed. Right, so the foreclosure proceeding is only relevant because there was no judgment of foreclosure issued at the time of the preservation, and that's the basis of our claim with respect to lien theory, recovered possession of the property before foreclosure by changing the locks on Mr. Santoro's home, shutting off the utilities, and excluding him from the premises. So that's the part I understand, and you've made that point, and I appreciate it, but I was trying to follow up on whether or not there was any opposing counsel gains any traction in his, I think, implied argument that that ongoing proceeding provided notice so that this wasn't some kind of end run. I disagree with that argument. Mr. Santoro was completely aware that there was a state foreclosure proceeding, but that does not provide notice to him that Aukwin was going to order a preservation and lock him out of his own home. And you think that's the notice that would have been required? No. Aukwin is required to send a 15... Per its own policies, Aukwin is required to send a 15-day notice of vacancy letter as soon as one of its agents and inspectors reports the property as vacant, and that's what did not happen in this case. Right, so it doesn't provide. So the answer to my question is yes. Yes. Okay, great. Thank you very much for your argument. Thank you. We appreciate it. We'll take this case under advisement. Oh, I want to thank the University of Washington and your pro bono clinic. We appreciate your help and faculty's assistance very much. Thank you.
judges: BERZON, CHRISTEN, Block